May it please the Court, my name is Ricky Ivey, attorney for the Appellant at the Laws. In this case the lower court held, I refer at page 123, line 18 of the AER, that the decision in this case rests upon the determination of whether the appealee's use of Appellants in addition to the song Very Special constituted the use of her voice, name, persona, or sound recording. We believe this focus in the subsequent analysis is wrong. For purposes of finding preemption, the questions to be determined are a. whether the work at issue is fixed in intangible form, and whether it comes within the subject matter of copyright under section 102, and b. whether the rights protected are equivalent to the copyright protections under section 106. Let me see, could the copyright holder in this case, could the copyright holder have published the music, the rendition? There were a number of copyright holders. Sony held the sound recording copyright. I'm talking about the sound recording. Yes. So Sony could have. They could publish the sound recording. But are you saying Sony could not license use of parts of the sound recording? Sony could license use of parts of the sound recording. Okay. So it can do that. But you're saying even if it did so, the person licensed couldn't use it because of some sort of right of publicity. Is that correct? Are you saying that? No. Let me clarify what I'm saying. Sony could not license any, excuse me, a lecturer who owned the sound recording. I didn't hear you. A lecturer who owned. I meant a lecturer, I'm sorry. MGM to Sony, wasn't it? Yeah, I meant Electra. The lecturer that owned the sound recording could not license what it did not have. Let me ask you a question. If I hope if Electra holds the copyright. Can Electra license somebody to make copies of that performance from the performance that it has copyright? Can it do that in your view? Yes. All right. Can it license somebody use parts of that in your view? Yes. Okay. So you're saying that even though the copyright holder can license somebody to use the recording or parts thereof. That person cannot use the recording or parts thereof without getting permission from your client. Is that correct? No. All right. What I'm saying. What are you saying? I'm saying that Electra obtained the sound recording copyright. But it did not obtain all of the sound recording copyrights. Because some of those rights were expressly reserved. So it could only license what it held. It could not license any more than it obtained. Well, you just said that they could license the use of the recording. Yes. In part. In part, depending on the. So that's what they did. We know they did that. Correct? I don't think that it could be limited in that way. Because they licensed the use for a sample. And that was what was precluded in the work for hire agreement. Electra did not have the right to license the use for a sample. Are you saying that the in the copyright offices, I go and find locate this thing. I'll find that they own the copyright in part. But the copyright is also owned by somebody else. No, no. So if I'm dealing with them, I'm dealing with them on the basis they own the copyright. You're saying that's not good enough. If the copyright holder can't do it. That's right. And here's why. Because there is the copyright holder acquired the copyright by virtue of a work for hire. And we know, and the statute specifically provides, that in a work for hire, some rights may be reserved. In other words, just because I own a particular, a sound recording, which I acquired in a work for hire, doesn't mean I can then use that work to promote pornography, use that work to promote the sale of alcohol, use that work to promote the sale of drugs, or use that work to do anything that I may be restricted in doing, in acquiring the work through a work for hire relationship. And so it would be incumbent upon the licensee to ask to see the contract governing the work for hire, in order to ascertain any restrictions on the use. So it's not a plenary use, or use for all purposes, where it is a work for hire. Mr. Huggins, why don't you just tell us in as plain language as you can, what they did that they shouldn't have done in this case. What happened in this case is there was a recording agreement. Ms. Laws, the vocalist, brings only her voice to the table. Nothing else. No writings, no music, nothing. Just her voice, her personality, and her expression of the lyrics that are written. These things, of course, are not subject to copyright. What Ms. Laws did was have an express reservation in her work for hire, where she indicated that this work cannot be used, my voice cannot be used in connection with any other work, cannot be used as a sample in any other work, cannot be used to promote any other products. My voice cannot be used on any audiovisual work, cannot be shown in a video. It cannot be embodied in a video. And that's what the contract provided. Now, Electra licensed this work to Sony. Sony then did exactly what the contract in the work for hire precluded. It used the work in a sample. It used the work on a video and subscribed Ms. Laws' name on the CD that was sampled. You see, and that's what I thought you were complaining about. Let's hold this situation as you've got it, and let's talk about something that doesn't have anything to do with the situation. There's a voice that comes through occasionally on television saying, this is CNN. We know precisely whose voice it is, but there's nothing that identifies whose voice it is. And the person who was paid the fee for saying, this is CNN, can't complain about the use of that voice in that situation, even when everybody knows who it is. But if they said, so-and-so and so-and-so has endorsed CNN, and his voice will be such and such, and he is now, then he would have a cause of action. And I see that as similar to what Ms. Laws is saying here. If you're playing, go ahead. But if you say, Mrs. Laws said so-and-so or she's done such and such, then you've breached. And the breach is the use of the name, not the voice. I think the breach is the use of the name. I also think the breach is the use of the voice. I agree with your analysis completely, but I think it's both. And I think that- Oh, the guy who, if it said, this is CNN, did it because he knew it was going to be used. Yes. And she made her recording knowing that it might be used, didn't she? Yes, but as in the recent case, Tony versus L'Oreal, which we have submitted, and I don't know if you had a chance to read it, it's from the Seventh Circuit. And that case, in fact, relies on and cites Downey. And that, of course, is a Downey versus Abercrombie, which is a Ninth Circuit case. That case specifically says that the fact that she used a fact that, in that case, the model authorized the use of her image for a certain period of time, did not mean that she authorized the use for all periods of time. And that, as a consequence, the fact that the image was used beyond the period of time prescribed in the license or the agreement allowing for her use amounted to an appropriation of her personality. Well, that's a little different. They're beyond the time, isn't it? No, I don't think it's really different because it's still a contract provision that says, that restricts the use. And we're in the same situation here. There's a contract provision that clearly and expressly restricts the use. And in Tony versus L'Oreal, the court said, wait a minute, if there's an express provision, as was here in this case, it doesn't matter that you originally agreed to allow the use to occur. You cannot use it beyond the period of time of that agreement. If you do otherwise, it's a violation of the right to pursue. I have a problem with the answer you gave to Judge Ferris, or maybe I don't. Difficulty I have is this. Assuming for the moment that they could use the recording itself, I have a very hard time seeing why they couldn't say that it was she whose recording was used. I'm sorry. All right. Let's say they could use the recording and they could sample it. It seems to me you separately argue that, but they couldn't say, they couldn't use her name as being the person who did that recording. I believe you're saying that. Yes. I have a very difficult time with that. If the one is permissible, then I can't really quite see why the second one is not. That's why I said I think they're both. Well, I know you said that, but I'm trying to separate it because you are in your briefing. At least you separate them. I'm trying to separate it. Assuming you lose on the music, then how do you win on the name? Well, again, we talk about the subject of copyright. A name cannot be the subject of copyright. Well, I understand that. It can't be. And so the copyright would not preempt the use of her name. I understand that in theory, in some sort of general theory, but I, I don't understand it in practice. For example, let's say Random House owns the copyright to Cider House Rules. And I go and I ask them, can I publish it? And they say, sure, we'll let you print copies of Cider House Rules. And then John Irving says, well, that's fine, but you can't say it's by John Irving. That sounds a little bizarre to me. I mean, his name isn't the subject of copyright. But can it possibly be that the Congress or the law doesn't say if you publish Cider House Rules, you can say it's by John Irving? I don't think so. I think the message is what's here. The message is one of endorsement and to say that, yes, you may publish the work itself, but I don't want you to use my name because I don't want to give the message to the public that I'm somehow endorsing your publication or endorsing your use. That's a little bit off because they don't say that. I can see in this document that that's all we're talking about. Suppose in Cider House Rules, John Irving prints a poem by Stephen Spender and he goes to the copyright holder and says that, OK, we put in Spender's poem. And the copyright holder says, sure. But when you do it, we want you to put on your fly leaf. By permission of the copyright holder of this Stephen Spender poem. Then they violated Spender's rights of publicity, are you saying? Are you saying the copyright office gave instructions? Copyright holder. Holder. Holder of the copyright, sure. He says, look, if you're going to use the copyrighted poem in the middle of your book, we want you to say who it's by. Most authors would like that, actually. Who it's by. And they say, it's by Stephen Spender. What? I think you're saying, no, they can't do that, because if you wanted to say that poem that was copyrighted, it was by Stephen Spender. You've got to go ask Stephen Spender's permission to use his name in the book. I don't quite understand that. I don't see how copyright law can mean that. I'm not I'm sorry. I'm not quite sure. Follow the analysis that. Well, the analogy is this. They if they can use the music. For the moment, you don't agree. They can use the music. Then what they say is. This music has samples from Deborah Law's recording. Very special. That's what it says. As in my example, this book on the fly. Lee, this book has a Stephen Spender poem in it. Now, you got that from the copyright holder, but you're saying spent. You'd have to go to Spender separately, never mind the copyright, and ask his permission to say it was his poem. I think you're saying that. So that every time I go for a copy, try to get a copyright, I want to use something in copyright. I not only have a copyright holder, but I've got to go to whoever the author was or the writer or the singer and ask their permission to say that that's what it is. I think you're saying it's a little bit different. I'm because I'm saying in the context of a work for hire or Stephen Spindler, whoever has written a particular piece of work, hired to write someone's work. And in that agreement has specific reservations. If the person wrote the poem and had a specific reservation against using their name in any publication of that work, then yes, if it was a licensee, it would be incumbent upon you to review the contract for hire. Because the licensor or the copyright holder would not have the right to license the person's or the author's name in connection with that work. So I'm saying that essentially to acquire the copyright does not mean that the copyright holder has the right to do all things afforded under the Copyright Act. Where it is a work for hire and where there are specific reservations made in the work for hire agreement. Why isn't your action against Electra? We have an action against Electra. We have an action against Electra for breach of contract. But as the court, the lower court points out, Ms. Laws is not in contract with Sony. She has no contractual relationship with Sony. What she has is her right of publicity claim against Sony. And that is the use of her voice and her name without permission. So the 3344 claim is the right of publicity. How was Sony supposed to know that they had to get her permission on the name? Again, this is a work for hire. Whenever there's a work for hire, there's a work for hire relationship. There's a work for hire agreement. And in this case, Electra had an agreement with Ms. Laws. Is Sony responsible for going to Electra and asking for a copy of that agreement? I think absolutely so. There's nothing wrong with it. There's nothing wrong with doing due diligence. There's nothing wrong with making the inquiry. And there's nothing wrong with asking for the contract that provides for this use. This is like any other piece of property. There's nothing wrong with the buyer conducting due diligence. If Sony were to take this, if Sony, it's not Sony, some other company were to take this work and take Ms. Laws' voice and use it in connection with some offensive use, such as alcohol or pornography or drugs or anything else that would be offensive, it would not be too much to ask the licensee to see the agreement by which the copyright holder acquired the copyright before using this person's voice in that manner and subjecting that person to that type of ridicule. So I don't think there's anything wrong at all in the copyright, in the licensee doing due diligence, merely asking for a copy of the agreement that provided for the work behind it. If I have one minute and 48 seconds, I would like to reserve some time. Certainly. Thank you. Mr. Fracklin. Thank you, Your Honors. My name is Russell Fracklin. I represent Sony Music Entertainment, the Alpha Lee and the defendant below. I think Your Honors, collectively, have actually hit on what the key issue is in this case, and that is both by statute and by rationale. The Copyright Act has decided that under these circumstances, the public, the parties here, look to one place and one place only, and that's the copyright law. Your Honor asked, how is Sony to know? The answer is very simple. The copyright law provides how Sony is to know. Sony goes to the copyright holder. There is no dispute in this case that Elektra, with whom Sony contracted, was the complete 100% owner of all copyright rights, including the right to issue licenses for samples to Sony. Any other requirement that is imposed in a case like this would simply destroy the supremacy of the Copyright Act when dealing with copyrighted works. They say that the contract specifically said that Sony can't do that, the contract. Your Honor. Does it specifically say that Sony can't do that? It doesn't say that. There is a dispute as to what the contract says. I have my interpretation of it. They have their interpretation of it. It is, if Your Honor looks, paragraph 4 is the broad grant of rights. There is no dispute about that, 100% copyright. Paragraph 6 is what they consider to be the limitation. I read it differently than they do. The court below didn't have to read it at all because, as the court pointed out, that's contract issue. Indeed, there is another lawsuit pending on the contract below between Ms. Laws and Elektra, the copyright holder. I think, Your Honor, the argument made by Ms. Laws ignores several key issues. It ignores the plain language of the Copyright Statute, Section 301. We are dealing here with exactly the stuff that federal preemption is made of. We're dealing with a work of authorship, clearly, and one that is fixed in a tangible medium. And secondly, we're dealing with a claim that essentially, more than essentially, identically, is the equivalent to copyright. And all one needs to do, all the court below needed to do, and all Your Honors need to do, is to look at the complaint to see that that is the case. In the complaint, in the excerpts of record, pages 3 and 4, the underlying assertion is that there was a breach of the right of publicity because of sampling, which is a reproduction and derivative work right that is granted to the copyright holder, and because, in Ms. Laws' words, Sony made a remake of her recording. Again, the reproduction right. And indeed, Your Honors, one must, one need look only to, if you have to go further than that, and I don't think you do, but I would point out to the court, in Mr. Hubert Law's declaration, the owner of Spirit Productions, the contracting party, in opposition to the summary judgment motion, looked to see what he is alleging is the breach here. And I'll just quote one part of it, and that's excerpts of record at page 89. The use of Deborah Law's original vocal recordings without her consent allowed the producers to avoid compensating Deborah for her performance. We're dealing here with one thing, Your Honors, a singular vocal performance fixed in a copyrighted sound recording. Counsel, what do we do about the name? The name ordinarily cannot be copyrighted, but I'm curious about Judge Fernandez's questions about trying to separate the work from giving credit to the author. And I'm wondering whether I'm going to use E.E. Cummings because I don't know the poet that Judge Fernandez was referring to. So let's suppose that we had an E.E. Cummings poem that was going in, and we're going to say, well, it's an E.E. Cummings poem, and because it's very offbeat in the way it looks, it's obviously E.E. Cummings. But we're not going to tell you who it is because we're afraid that we would violate somebody's right of publicity. Not only could you do that, Your Honor, but you could do it in lowercase, as I recall E.E. Cummings being the name. And the reasons are simple. Number one, not to permit that to happen would, again, impinge on the federal copyright system. How could you provide for exclusive ownership rights in copyrighted materials if the exclusive owner can't go out and tell people what it is that they are buying? But more so than that, there are a couple of other reasons. Well, you could tell them what they're buying. They just couldn't give public credit. Well, I don't want to debate with you, Your Honor. I'm not quite sure how I could conceive of telling somebody that they're buying. You know, Mr. Crackman, you ought to listen carefully because you may have more trouble than you thought. When I was asking initially, I didn't know that maybe two of us were thinking along the same line in all it takes to vote. So you might want to pay particular attention to the question that Judge Barb is asking you. I do, Your Honor. And let me respond directly to it. Well, let me just amplify the question. This was a very, very successful recording, as everybody knows now. But going in, everybody couldn't know what was going to happen. So Ms. Laws is saying, certainly Jennifer Lopez did a good job. But identifying me on that jacket helped Jennifer Lopez do what she did. And you didn't have a right to do it. And he's saying, as I understand it, just if I finish this question, it's not going to be too much longer. I'm sorry, Your Honor. But he's saying Sony should have looked, but they didn't look at the contract that we had with Electra. If Sony had looked at the contract we had at Electra, Sony would have known you can't identify without consent. Now, he's taking it further. He's saying you can't identify or use without consent. But let's assume half of it is so, all of it is so. And you didn't check. There's no question about that. So he's saying that's the problem. Don't we have to look at that? No, Your Honor. And I apologize for interrupting. I was chomping at the bit because I have several answers. All right. First of all, let me clarify one thing from the record. The credit to Ms. Laws, which is in the excerpts, it's actually page 14 of the supplemental excerpts, did not appear on the jacket. You had to buy the record first and open it up, and it was inside. I see. That's number one. Number two, there is no dispute that this is absolutely truthful credit. Number three, Your Honor, as Judge Baird said below, that simply is not an exploitation under those factual circumstances of the name. But further, the case law is clear that there is a right to truthfully identify a copyrighted work when you have the right to exploit that copyrighted work. I would submit to the Court that that is not only logical, but it is virtually required under the paramount copyright law to be able to give the copyright holder or its licensee the right to sell and market. It is also a permissible First Amendment act to truthfully identify a product. And, Your Honors, we cited several cases in our brief at page 36, but let me just quote from the Guglielmi case, which I call the Rudolph Valentino case. Your Honors will recall that's the California Supreme Court talking about the right of publicity. And it's 25 Cal 3rd at 873. And I'm quoting, since the use of Valentino's name and likeness in the film was not an actionable infringement of Valentino's right of publicity, the use of his identity in advertisements for the film is similarly not actionable. And there are a host of cases, going back to Joe Namath and the use of his likeness from a Sports Illustrated article to Joe Montana, happened to be two sports figures in a California case, that hold that. And I would submit to the Court that that is only logical and makes sense. And I would take it one step further, Your Honors. Arguably, under decisions of this Court, if we did not credit Ms. Laws, she would have a claim against us, for using material without an appropriate credit under the Lanham Act. Arguably. So for all of those reasons. Let me ask you the first reason. The second reasons are saying, well, she can't spell out a California claim anyway. But that says nothing about preemption. The first thing you said, I'm sorry, I'm sorry. The first thing you said was that there's plenty of cases that say the right to exploit a copyrighted work that goes along with copyright law. The cases clearly say that you can use the person's name. What's the best case for that? Let me see if I understand what Your Honor is asking. Is there a case under copyright that says that the copyright owner has the right to use the name as attendant to the copyright owner? This is Cider House Rules by John Irving. He can put by John Irving. I think the case I cited to the Court is the best of Rudolph Valentino case because there, there was the copyright holder of the film. And there was no right of publicity claim either for use of Valentino's. Because of preemption or because California just said nuts? No, I don't think it's a preemption issue in this particular case, Your Honors. So you don't think that copyright law preempts the right to use the name? I think I could say it two different ways. Well, why don't you just answer that question? Do you think copyright law preempts the states from saying you cannot use the author's name when you use the copyrighted work? I think copyright law preempts, yes I do. I think copyright law preempts a truthful identification, a truthful identification of the person. That was the first thing you said. And I said, what's your best case for that? And you said, well, look at California's law on blah, blah, blah. And I'm asking you about copyright law. What's your best copyright case on that subject? Well, I think there are, as I recall, Your Honors, several district court cases, including the Page case that I think is cited in our brief on that point. But I think it's a very, Judge Fernandez, there's a narrow line there. You can call it copyright law preemption, or in this particular situation, you can call it, as Judge Baird did, not an exploitation, not a right of publicity exploitation of the name. Yeah. Although you understand that those could be, California might decide that there was no right of publicity because it didn't think that the cause of action would extend that far, irrespective of whatever the copyright might hold. Or California might say there's no right of publicity because as we read the copyright laws, we are preempted from finding such if we were otherwise disposed to do so. I do, Your Honor. And under either of those constructs, we win, I would submit to the Court. Yeah. I think Judge Fernandez was trying to get at which of those is the case. Are both of them the case, or is just one of them the case? I think they're both. I don't think the district court reached the second one. Okay. But how about the Guglielmi case that you cited earlier, the Rudolph Valentino case? Did California courts hold that there was no right of publicity, just in and of itself, or no right of publicity because it was preempted under the copyright laws? My recollection, Your Honor, is that that was a First Amendment issue, not a copyright preemption issue. So it was not protected under the California right of publicity statute. Okay. There's one other point I'd like to make to the Court that I think reinforces everything that I've said, and that is to look, in particular, at the case law. I would submit to the Court that Your Honors are not writing on a blank slate here, nor was Judge Baird below. What we are talking about, and I don't think it's disputed, is the use of a copyrightable performance that's embodied in a copyrighted work. This is, for all intents and purposes, the Fleet case that we cited to the Court, the California state law case, except it's in the medium of a sound recording, rather than in the medium of a motion picture. But other than that, it is, I would submit to the Court, on all fours, and it is consistent with copyright law preemption. And Your Honors will recall in the Fleet case, the Court specifically stated that because what we were dealing with there was a copyrighted performance, and all the copyright holder was doing was exploiting that fixed performance, consistent with its rights under copyright, which is exactly all that Electra was doing here, and Sony as a licensee, that that claim, therefore, was preempted. And the Court in Fleet says it several times, in several different ways, and quite clearly so, I would submit to the Court, and I won't take the Court's time to quote it, but it's at page 1920 of Fleet 50, Calaf 4th, and 1921. And the Court there went even further, of course, to say that an actor does not have the right under preemption to stop that exploitation. And that, I would submit to the Court, is consistent with the holdings of this Court. And all this Court needs to do in that regard is to look at cases like Waits, the John Waits sound-alike case, Wendt, the Cheers actors' cases, and the New Line Cinema case, where over and over again, in those cases as well as others, but specifically in those cases, the Court is making, this Court has made that distinction. And I'll just give one example, if I can, to the Court, and that is the Wendt case where the Court determined that there might be a right of publicity and remanded for that purpose when there were statutes that were allegedly in the configuration, in the likeness of those two actors who sat at the bar at Cheers. But the Court went out of its way at page 810, 125 Federal Reporter 3rd at 810, to say, Appellants here are not seeking to prevent Paramount from exhibiting its copyrighted work in the Cheers series. That was the distinction that this Court made. It's the distinction made by the Court in Waits. It's the distinction made by the California courts in the Fleet case. And it is indeed the distinction made by the courts in the cases that they cite, the two cases, the case from this Court, the Abercrombie case, and the KNB Matthews case. All of them are very, very consistent. And what they all consistently say is that if you are using a, if the gravamen of your complaint is the use of a fixed performance, consistent with Paramount federal law, you cannot stop the exploitation of that performance, either by reproduction, distribution, or a derivative work. And it's also consistent, I might say, with cases outside the circuit that we've cited, the Baltimore Orioles case, the Lanham case. There is not a single case I would submit to the Court that I found or that they found or that I think the Court would find where you have had a copyrighted performance fixed in a tangible medium that gave rise to a right of publicity claim. Not one. And the reason is because if you did that, then you would throw into terrible confusion the Paramount copyright system. Anybody who is in Sony's position would have to do much more than look to the Copyright Act to determine whether they have the right to exploit a copyrighted work under one of the enumerated copyright rights. And you'd have to do more than even look to a contract, although I don't think there's any obligation to go back, and there never has been in the copyright law, to go back beyond who the copyright holder is. Indeed, who the copyright holder is when there's no dispute as to who the copyright holder is as here. Everybody who appears in every sound recording would have to grant consent. And indeed, maybe not even people who appear. What about the producers, the musicians, the writers of the musical composition? Everybody who appears in a movie would have to consent to exploitation of that movie or to a film clip from that movie. No, they'd say you'd have to look at the contracts for all those hundreds of people to see if they reserve the right to consent, I believe is what they're saying. And then you would have to, Your Honors, interpret those contracts, if you will. You'd have to go back maybe 20, 30, 40 years, indeed in this case, to determine what they meant. If there was an ambiguity, you couldn't exploit the work or you wouldn't exploit the work. You'd have all of those problems, plus probably a lot more that I'll think of after I sit down. But it just is not consistent with the certainty. This Court has said over and over again in cases, in fact, that I've had, one of the things that the copyright law is designed to do, not only to promote the supremacy of the Copyright Act in 301 or the copyright law, certainty, certainty in copyright law and in exploitation of copyrighted works. And that goes out the door. Thank you, Your Honors. Thank you, Mr. Frackman. Mr. Ivey? Your Honors, the counsel mentions the Fleet case as being what this case is all about. Well, in Fleet, the Court held that the dramatic performance of the actors that brought the claim was copyrightable. The Fleet Court didn't analyze what a dramatic performance was. It made no effort to do that, but it said that it was a subject of copyright. And in this case, we have a music performance,  And I think that that analysis has got to be made. Because in this case, talk about a musical performance. A musical performance is only the expression of the lyrics. It is only the expression of the underlying work. It is only the personality of the singer, in this case, Debra Laws. Those elements are not copyrightable. Those elements are not the subject of copyright. And on that basis, this case could not be preempted under the copyright law. It's a factual issue that I'd like to address, and I don't think it's that material, but the factual issue being that there's no lawsuit by Debra Laws against a lecturer. There's a lawsuit by Spirit Productions against a lecturer. Debra Laws did not have a contract with the lecturer. Her only way of protecting her personality or protecting her rights is through her right to publicity. And that's the action she brought against Sony. And I disagree that if, oh, I think the court asked the court to look at the case, the recent case of Tony versus L'Oreal. And that case specifically talks about the fact that a copyrighted work, in and of itself, does not defeat a claim for right to publicity. And also, like the court, to bring to the court's attention the recent writing of McCarthy in his new edition at page 361, where McCarthy says, offers his opinion, that the law's case was wrongly decided. In his opinion, the fact that there was no commercialized imitation of the voice, but the voice was taken from a sound recording, makes no difference in bringing the claim of right to publicity. So in this author's opinion, which this circuit has quoted very often, this author's opinion is that there, of course, is no preemption for laws as right of publicity can claim. The rights of a copyright are divisible.  Does not mean that all rights associated with the copyright owner are held. And in the case of a musical work, that's the case that we're talking about here, it is not onerous, it is not burdensome for a licensee to review a simple musical contract. What's your best case to say that you must go beyond whatever you receive when you look at the copyright? I think Tony versus L'Oreal, that was just decided. It was a photograph. But the logic and the reasoning and the arguments advanced in Tony apply equally, equal force to the use of a voice. And in that case, the court only turned, at least the principal reason that the court found for the appellant in that case, was because of the contract. That Tony's agreement for use of her image did not allow for the subsequent users, the predecessors of interest, to use that particular photograph. Okay, counsel. Thank you very much. We thank both counsel.
judges: Farris, Fernandez, Bybee